IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DESIRA D. ROY,**

      **Plaintiff,**

vs.                                                                    **No. CIV 08-0341 RB/LAM**

**LIEUTENANT JASON DAVIS, in
his personal and official capacity,
JANN GARTMAN, Warden, in her
personal and official capacity,
and LEA COUNTY, STATE OF
NEW MEXICO, a COUNTY
MUNICIPALITY,**

      **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion to Reconsider Court's Opinion and Order on Defendants' Motion for Summary Judgment or in the Alternative to Enter Separate Order Pursuant to Rule 58(d) (Doc. 98), filed on July 28, 2009. Jurisdiction arises under 28 U.S.C. §§ 1331, 1343(a)(1), and 1367. Having considered the submissions and arguments of counsel, relevant law, and being otherwise fully advised, Defendants' Motion is **DENIED.**

**I.     Procedural Background.**

On March 31, 2008, Plaintiff Desira Roy filed this civil rights action for money damages under 42 U.S.C. §§ 1983 and 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Article II, Sections 10 and 18 of the New Mexico Constitution, and state law. Ms. Roy claimed that Defendant Lieutenant Jason Davis subjected her to excessive force and violated her substantive due process rights when he shoved her face into a concrete floor as she was booked into the Lea County Detention Center ("LCDC") on December 23, 2007. With respect to Defendant Jann

Gartman and Defendant "Lea County, State of New Mexico, a County Municipality," Ms. Roy alleged deliberate indifference in hiring, training, supervision, and ratification, as well as spoliation of evidence.

In her Amended Complaint, Ms. Roy alleged (1) use of excessive force in violation of the Fourth and Fourteenth Amendments; (2) use of excessive force under the New Mexico Constitution and state law; (3) violation of substantive due process under the Fourteenth Amendment; (4) municipal liability under §1983; and (5) intentional spoliation of evidence under state law.

The Court dismissed Plaintiff's claim for intentional spoliation of evidence on June 3, 2009. (Doc. 93.)  Defendants moved for summary judgment on all other claims.  On June 30, 2009, the Court granted in part and denied in part Defendants' Motion for Summary Judgment.  Specifically, the Court dismissed the personal capacity claims against Defendant Gartman and the claims against "Lea County, State of New Mexico, a County Municipality," and found that questions of material fact precluded summary judgment on all other claims at issue.

Defendants seek reconsideration of the denial of summary judgment on the grounds that (1) the Court erroneously determined questions of material fact precluded summary judgment; and (2) the Court applied an incorrect standard to determine the "official capacity" liability of Defendants. In the alternative, Defendants request that the Court (1) enter a separate order to allow Defendants to appeal the qualified immunity issue and (2) stay this matter pending the resolution of Defendants' appeal.  Defendants filed a notice of appeal on July 29, 2009.

**II.     Standard.**

A motion for reconsideration filed prior to final judgment is "nothing more than an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Wagoner v. Wagoner*, 938 F.2d 1120,

1122 n.1 (10th Cir. 1991). "Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* A motion for reconsideration is "not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.*

**III.   Discussion.**

**A.   Questions of material fact preclude summary judgment on Defendant Davis' assertion of qualified immunity.**

Defendants contend that Plaintiff's evidence in opposition to summary judgment was insufficient to meet her burden in response to Defendant Davis' assertion of qualified immunity and the Court improperly relied upon Plaintiff's affidavit.

In response to an assertion of qualified immunity, the plaintiff must meet a two-part burden to avoid summary judgment: (1) that the defendant's actions violated a constitutional or statutory right and (2) that the right was clearly established at the time of the defendant's unlawful conduct. *See York v. City of Las Cruces*, 523 F.3d 1205, 1209 (10th Cir. 2008). The Court must view the entire record to assess whether Plaintiff met her two-part burden to avoid summary judgment. *See id*.

The Court found issues of material fact precluded summary judgment with respect to the first element; whether Plaintiff established that Defendant Davis's actions violated a constitutional or statutory right. The Tenth Circuit has held that the Fourth Amendment bars the use of excessive force during the period immediately following arrest and before the person is taken before a judicial

3

official for a probable cause determination. *See Barrie v. Grand County, Utah*, 119 F.3d 862, 866 (10th Cir. 1997); *Austin v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991), *abrogated on other grounds, Johnson v. Jones*, 515 U.S. 304 (1995). Under the Fourth Amendment, the question is whether the defendant's actions were "objectively reasonable" in light of the facts and circumstances confronting him, without regard to underlying intent or motivation. " *Graham v. Connor*, 490 U.S. 386, 397 (1989).

Setting aside Ms. Roy's affidavit, the record, construed in the light most favorable to Ms. Roy, established the following material facts: (1) Defendant Davis took Ms. Roy to the floor; (2) Ms. Roy's face hit the concrete; (3) Ms. Roy was knocked unconscious; (4) Ms. Roy sustained an inch-long laceration above her left eye; (5) Ms. Roy bled profusely; (6) three stitches were required to close the laceration; (7) photos taken in the days following the incident demonstrate that Ms. Roy sustained a left black eye and extensive swelling on her face; (8) Ms. Roy weighed only 105 pounds; and (8) at least three guards were readily available for back up when the injury occurred. Based on these material facts, the record, at the current stage of the proceedings, is insufficient to allow the Court to determine, as a matter of law, that Defendant Davis' actions were objectively reasonable. Based on the above-identified factors, the fact finder could conclude that Defendant Davis' actions were not objectively reasonable and therefore violated a constitutional right, namely, the Fourth Amendment. For this reason, summary judgment on the issue of whether Defendant Davis' actions violated the Fourth Amendment was properly denied.

Ms. Roy also satisfied the second requirement to defeat qualified immunity, namely that the right was clearly established at the time of the defendant's unlawful conduct. *York*, 523 F.3d at 1209. The law concerning Ms. Roy's Fourth Amendment right to be free from the use of excessive force during her arrest was clearly established on the date of the incident. *See Graham*, 490 U.S.

4

at 396-97.  Prior to the incident, the Tenth Circuit had held that the Fourth Amendment bars the use of excessive force during detention after arrest before the person is taken before a judicial official for a probable cause determination.  *See Barrie*, 119 F.3d at 866; *Austin*, 945 F.2d at 1160. Therefore, the right of Ms. Roy to be free from the use of excessive force was clearly established. In response to Defendant Davis' assertion of qualified immunity, Ms. Roy met her two-part burden to avoid summary judgment because the record established that (1) a reasonable fact finder could conclude that Defendant Davis' actions violated the Fourth Amendment; and (2) Ms. Roy's Fourth Amendment right to be free from the use of excessive force was clearly established at the time of the Defendant Davis' alleged unlawful conduct.  Because material issues of fact remain unresolved as to the question of whether Defendant Davis' actions were objectively reasonable, summary judgment based on qualified immunity was properly denied.

**B.      Defendant Gartman is not entitled to qualified immunity in her official capacity.**

Defendants contend that Defendant Gartman is entitled to qualified immunity in her official capacity "for the additional reasons that post-deprivation failure to discipline does not constitute a constitutional violation and there is no evidence that the training provided at the Lea County detention facility was inadequate or caused the alleged deprivation."  (Doc. 99 at 2.)  Defendants did not raise the qualified immunity aspect of this argument in their motion for summary judgment.

Qualified immunity is available only to officials sued in their personal capacities; it is not available to governmental entities or officials sued in their official capacities.  *See Starkey ex rel. A.B. v. Boulder County Soc. Servs.*, 569 F.3d 1244, 1263 n.4 (10th Cir. 2009) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005)); *see also Moore v. City of Wynnewood*, 57 F.3d 924, 929 n. 4 (10th Cir. 1995).  As a matter of law, Defendant Gartman is not entitled to qualified immunity on the official capacity claims.

**C.   Defendants are not entitled to summary judgment on the official capacity claims.**

Ms. Roy has sued Defendant Davis and Defendant Gartman in both their individual and official capacities.  Plaintiff's official capacity claims against Defendants are in reality claims against Lea County.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (a suit against an officer in his official capacity is in essence a suit against the entity that officer represents); *see also Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) (stating that a suit against the sheriff in his official capacity was "the equivalent of a suit" against the county).  "[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).  Lea County cannot be held liable based solely on its employment of someone who has committed a constitutional violation.  *See Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). ("The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees.").

"When a policy is not unconstitutional in itself, the county cannot be held liable solely on a showing of a single incident of unconstitutional activity." *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) (citation omitted).  Notably, however, the County may be liable for a constitutional violation resulting from inadequate training when its failure to train the lawless employee reflects a deliberate indifference to the plaintiff's constitutionally-protected rights.  *Darr v. Town of Telluride*, 495 F.3d 1243, 1256 (10th Cir. 2007) (*citing City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)).

To establish the official capacity liability of a County employee under §1983, a plaintiff must show that (1) a municipal employee committed a constitutional violation, and (2) that a municipal

policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). The Tenth Circuit has held if the employee committed no constitutional violation, the claim against the supervisory authority is properly dismissed. *Taylor v. Meacham*, 82 F.3d 1556, 1564 (10th Cir. 1996); *Webber v. Mefford*, 43 F.3d 1340, 1344-45 (10th Cir. 1994) ("A claim of inadequate training, supervision, and policies under § 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation by the person supervised"). In this case, the question of whether or not a constitutional violation occurred hinges on a factual dispute regarding the level of force used against Ms. Roy.

On summary judgment, the moving party has the burden of demonstrating that there is no genuine issue as to any material fact. As previously discussed, the question of whether or not a constitutional violation occurred hinges on a factual dispute regarding the level of force used against Ms. Roy. However, Defendant Gartman would be entitled to summary judgment if she demonstrated that a municipal policy or custom was not the moving force behind the alleged constitutional deprivation. *See Jiron*, 392 F.3d at 419.

Defendants presented evidence that it is the policy of the LCDC to provide employees with proper training and guidance on the permissible use of force and to ensure that force is only used when necessary and only to the degree necessary to subdue an individual inmate. (Doc. 54-17.) Moreover, Defendants presented testimonial evidence that employees of the LCDC receive 40 hours of basic detention officer training, along with numerous other training classes, and that employees are familiar with the policy handbook. (Davis Dep. at 5-7; Buford Dep. at 5; Def. Ex. G.) However, Ms. Roy called into question the quality of the training Lea County provides employees of the LCDC by pointing to testimonial evidence that training was not provided relative to the handling of intoxicated persons. (Davis Dep. at 5; Def. Ex. G.) Failure to train detention officers regarding

a routine aspect of their job could be reasonably construed as deliberate indifference. *See City of Canton v. Harris*, 489 U.S. at 381-82.

Similarly, it is factually unclear whether or not Defendant Gartman, who is responsible for supervising all personnel at LCDC, was deliberately indifferent in responding to the incident at issue. Defendant Davis, Officer Chastain, Officer Moore and Officer Carreon completed reports on the incident immediately after it occurred. (Davis Dep. at 53; Gartman Dep. at 15; Def. Exs. L1-L4.) After Defendant Gartman reviewed the reports, she determined that no disciplinary action or additional investigation would be taken. (Gartman Dep. at 15.) Whether or not Defendant Gartman's actions were reasonable or deliberately indifferent is almost entirely dependent on the level of force used against Ms. Roy, which is factually in dispute. Due to disputed issues of material fact, summary judgment would be inappropriate on the official-capacity claims. *See* Fed. R. Civ. P. 56(c). The Memorandum Opinion and Order was correct with respect to the official capacity claims against Defendant Gartman.

**D.      Whether the Court correctly held that material issues of fact preclude summary judgment on the excessive force claims.**

Defendants moved for summary judgment on Plaintiff's excessive force claims. Rule 56(c) directs the entry of summary judgment in favor of a movant who "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under Rule 56(c), the moving party:

> *always* bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002) (*quoting Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) (emphasis supplied)). Notably, "[b]efore the burden shifts to the nonmoving party to

8

demonstrate a genuine issue, the moving party must meet its 'initial responsibility' of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law." *Reed*, 312 F.3d at 1194. Defendants did not meet this burden.

Determination of "whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. at 396. (citations and some internal quotation marks omitted).

Among the factors to consider are (1) the severity of the crime at issue; (2) whether the plaintiff poses an immediate threat to the safety of the officers or others; and (3) whether the plaintiff is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)). An assessment of the degree of force actually used is critical to the balancing test used to determine if the force was excessive. *See Garner*, 471 U.S. at 8-9.

In this case, there remain questions of material fact regarding the degree of force Defendant Davis used against Ms. Roy. Defendant Davis' official report states that he "assisted" Ms. Roy to the floor with the minimum force necessary to her actions. (Def. Ex. L-1, Davis Report.)

In his deposition, Defendant Davis explained how Ms. Roy was taken to the ground: "Like I said, after she attacked me, spitting in my face, I had a hold [sic] of her left arm with my right hand. I dropped to one knee and I still had a hold [sic] of her." (Davis Dep. at 41.)

Officer Moore reported that Officer Carreon's legs became entangled in Ms. Roy's legs and they fell to the concrete floor. (Moore Dep. at 16-17; Carreon Dep. at 28.) Officer Moore testified in her deposition that Defendant Davis tried to break Ms. Roy's fall. (Moore Dep. at 18.) Officer Carreon then fell on top of Ms. Roy. (Moore Dep. at 19; Carreon Dep. at 26.)

9

Officer Carreon testified in her deposition that she was not sure how Defendant Davis assisted Ms. Roy to the floor; "if he threw her or what." (Carreon Dep. at 26.) Nurse Gaitan observed "they all went down to the floor and it became a tangled mess." (Gaitan Dep. at 24.) Based on this record, Defendants have not satisfied their initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.

The Tenth Circuit Court of Appeals has specifically noted that the determination of whether the force used by a law enforcement official is excessive is, generally, a fact question for the jury. *Buck v. City of Albuquerque*, 549 F.3d at 1269, 1288 (10th Cir. 2008). Because the degree of force used against Ms. Roy remains in dispute, the Court cannot accurately gauge, at this stage of the proceedings, whether the actions of Defendant Davis were objectively reasonable. Indeed, summary judgment is legally inappropriate where a genuine issue of material fact remains. *See* Fed. R. Civ. P. 56(c). Although a jury would likely find in favor of Defendants, questions of material fact regarding the degree of force Defendant Davis used against Ms. Roy preclude summary judgment on the excessive force claims. The Memorandum Opinion and Order was correct with respect to the excessive force claims.

**E.     The Court declines to issue a separate judgment.**

Defendants contend that the Court should have entered summary judgment on Plaintiff's claim for violation of substantive due process rights, in accordance with its determination that any claim of excessive force is governed by the Fourth Amendment to the United States Constitution rather than substantive due process. Defendants also request that the Court enter a separate order to allow Defendants to appeal the denial of qualified immunity.

The Court determined that the Fourth Amendment, and not substantive due process, governs Plaintiff's claims. *See Barrie v. Grand County, Utah*, 119 F.3d 862, 866 (10th Cir. 1997); *Austin*

*v. Hamilton*, 945 F.2d 1155, 1160 (10th Cir. 1991), *abrogated on other grounds, Johnson v. Jones*, 515 U.S. 304 (1995). Defendants request may be construed as a request pursuant to Fed.R.Civ.P. 54(b), which provides:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed.R.Civ.P. 54 (b)

The purpose of Rule 54(b) is "to avoid the possible injustice of a delay in entering judgment on a distinctly separate claim or as to fewer than all of the parties until final adjudication of the entire case by making an immediate appeal possible." *Okla. Turnpike Auth. v. Bruner*, 259 F.3d 1236, 1241 (10th Cir. 2001) (quotation omitted). Such orders are not to be made routinely in light of the limited purpose of Rule 54(b), which is to provide a recourse for litigants when dismissal of less than all of their claims will create undue hardship. *Id.* at 1242. Defendants have not provided any argument under Rule 54(b). Notably, the record contains no indication of any undue hardship imposed on Defendants by the Court determination that the Fourth Amendment standard, and not the Due Process standard, applies to Plaintiff's claims. Under these circumstances, the Court declines to issue a separate judgment on Plaintiff's due process claim.

Defendants have not requested certification under 28 U.S.C.§ 1292(b). Section 1292(b) provides than an otherwise non-appealable order may be appealed if the district judge states in writing that (1) the order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and (2) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Certification under this section is within the discretion of the district court. *Swint v. Chambers County Comm'n*, 514 U.S.

35, 47 (1995). Even if Defendants had requested certification pursuant to § 1292(b), the Court would decline to exercise its discretion to certify that this matter is appropriate for interlocutory appeal.

The Court of Appeals has interlocutory jurisdiction over a denial of qualified immunity at the summary judgment stage to the extent that the denial "turns on an issue of law." *Fogarty v. Gallegos*, 523 F.3d 1147, 1154 (10th Cir. 2008) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). Under this limited jurisdiction, the Tenth Circuit may review the district court's abstract legal conclusions, such as whether the law was clearly established at the time of the alleged infraction. *See Behrens v. Pelletier*, 516 U.S. 299, 313 (1996). Appellate jurisdiction extends to situations where a defendant claims, on appeal, that accepting the plaintiff's version of the facts as true, he is still entitled to qualified immunity. *See York*, 523 F.3d at 1209. However, appellate jurisdiction does not extend to the factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference. *Buck*, 549 F.3d at 1276-77.

It bears underscoring that a district court's determination that the record raises a "genuine issue of material fact," precluding summary judgment in favor of the defendants, is not appealable even in a qualified immunity case. *Johnson v. Jones*, 515 U.S. 304, 313 (1995); *see also Shrum v. City of Coweta*, 449 F.3d 1132, 1137 (10th Cir.2006) (orders denying qualified immunity before trial are appealable only if they involve "abstract issues of law").

The Court notes that appellate jurisdiction appears to be absent in that the denial of qualified immunity was based on the existence of genuine issues of material fact regarding whether Defendant Davis' actions were objectively reasonable in light of the facts and circumstances confronting him. However, the existence of appellate jurisdiction is an issue to be decided by the Court of Appeals.

*See Fogarty*, 523 F.3d at 1154-55. No separate order is necessary. *See Buck*, 549 F.3d at 1276-77; *York*, 523 F.3d 1209; *Fogarty*, 523 F.3d at 1154-55 (addressing appellate jurisdiction with regard to denials of qualified immunity). The Court of Appeals will decide whether it has appellate jurisdiction over the denial of qualified immunity. The Court declines Defendants' request to issue a separate judgment.

### F.     Request for stay pending resolution of Defendants' appeal.

The Court will grant Defendants' request to stay this matter pending the outcome of their appeal.

### V.     Conclusion.

The Court correctly held that questions of material fact precluded summary judgment. Thus, for the reasons set forth in the Court's June 30, 2009 Memorandum Opinion and Order, as further explained herein, the motion to reconsider is without merit and should be denied.

**WHEREFORE,**

**IT IS ORDERED** that Defendants' Motion to Reconsider Court's Opinion and Order on Defendants' Motion for Summary Judgment or in the Alternative to Enter Separate Order Pursuant to Rule 58(d) (Doc. 98), filed on July 28, 2009, is **DENIED**.

**IT IS ORDERED** that Defendants' request for stay pending resolution of the appeal is **GRANTED**.

_____
**ROBERT C. BRACK
UNITED STATES DISTRICT JUDGE**